UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| BRODRICK ANDRAE JACKSON, | ) | |
| Institutional ID No. 1726575, | ) | |
| SID No. 7557796, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:14-CV-036-BG |
| AMOS RODRIGUEZ, | ) | ECF |
| Plainview Police Department, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Proceeding *pro se* and *in forma pauperis*, Plaintiff Brodrick Andrae Jackson, an inmate incarcerated by the Texas Department of Criminal Justice (TDCJ), filed this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights.  He claims that Plainview police officers searched and threatened his son and daughter in retaliation for the filing of his writ of habeas corpus.  He further claims that the other named defendants, including local school district leadership, were involved in a conspiracy with the police department to deprive him of his due process rights and redress before the courts.  He seeks injunctive relief, damages for emotional distress, and punitive damages.

## I.     Procedural History

The United States District Court transferred this case to the undersigned United States Magistrate Judge for further proceedings.  The undersigned thereafter reviewed authenticated records from the Plainview Police Department and conducted a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179, 181–82 (5th Cir. 1985).  The undersigned provided Jackson with an opportunity to consent to the jurisdiction of the United States Magistrate Judge, but Jackson did not

consent.   Pursuant to the order of transfer, the undersigned now files this Report and

Recommendation and recommends that this action be dismissed pursuant to 28 U.S.C. §

1915(e)(2)(B).

## II.      Standard of Review

A court must dismiss a complaint filed *in forma pauperis* if the court determines that the

complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks

monetary relief from a defendant who is immune from such relief.   28 U.S.C. § 1915(e)(2)(B)

(2014).   A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong

alleged.  *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).   A

complaint lacking an arguable basis in fact rests upon clearly baseless factual contentions, while a

complaint lacking an arguable basis in law rests upon indisputably meritless legal theories.  *See id.*

at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).   In reaching a determination regarding

the viability of the complaint, the court may consider reliable evidence such as the plaintiff's

allegations, sworn testimony obtained at a *Spears* hearing, and authenticated records.  *See Wilson*

*v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991).

## III.     Jackson's Claims and Summary of the Records

Jackson alleges that his children were searched in retaliation for a writ of habeas corpus that

he filed in the fall of 2013, in which he alleged official misconduct on the part of the Plainview

Police Department in regard to a search of his house that ultimately led to his arrest.   The police

officer, not named in this lawsuit, who obtained the search warrant was later indicted on charges of

official misconduct, including theft and forgery.   As a result of Jackson's writ, the Texas Court of

Criminal Appeals directed the trial court to review the facts of the warrant and determine if the

officer had committed professional misconduct in Jackson's particular case.  Jackson claims that, in retaliation for filing the writ, Defendant Officers Amos Rodriguez and Casey DeLeon searched and threatened his son and daughter at their respective schools in Plainview, Texas.

Authenticated records from the Plainview Police Department show that Officers Rodriguez and DeLeon assisted with campus searches in accordance with an interlocal agreement with the Plainview Independent School District (the district), which contracted with Interquest Detection Canines of Northwest Texas, LLC (Interquest), to provide contraband inspection services for the district.  According to a memorandum by Officer Rodriguez that is included in authenticated records from the Plainview Police Department, he assisted the Interquest K-9 dog handler on January 17, 2014, at Estacado Junior High School.  During the initial search, students left their classrooms and waited in the hallway.  While checking one of the classrooms, the K-9 alerted on a pair of shoes belonging to Jackson's son in addition to a jacket belonging to another student.  Officer Rodriguez wrote that Jackson's son was called back into the classroom and the K-9 handler discussed the scents that the dog is trained to alert on; Jackson's son was searched; nothing was found in his possession; and he was released back into the hallway.

Officer DeLeon also provided details in a memorandum regarding a search undertaken by the Interquest K-9 dog handler at Houston School on January 17, 2014.  He stated that all of the classrooms at Houston School are searched because of the small campus size.  In one of the classrooms the K-9 alerted on the belongings of two students, including a bag belonging to Jackson's daughter.  She was called back into the classroom; searched; no contraband was found; and she was released.  Officer DeLeon further stated that he arrived at Estacado Junior High to assist Officer Rodriguez after Jackson's son had already been searched.  He stated that he and Officer

Rodriguez again assisted with campus searches on February 12, 2014.  At Houston School, the K-9 did not alert on the property of Jackson's daughter, and she was not searched on that date.  At Estacado Junior High, the K-9 again alerted on property in the possession of Jackson's son, but no contraband was found and he was released.  Also included in the authenticated records are (1) a memorandum from the Plainview Police Department stating that both officers were found to be acting in accordance with general orders in assisting the existing school programs and (2) video surveillance footage from the hallways of the schools where the searches occurred on January 17 and February 12, 2014.

At the *Spears* hearing, Jackson testified that the search of both of his children on the same date, but at different schools, suggests malicious intent on the part of the police department. He claims that, according to his understanding, both his son and his daughter were threatened by the officers.  He testified that an officer threatened to remove his son from his home, but his wife was not directly threatened.  He further claims that Defendant William Mull, the Plainview Chief of Police, was involved in a conspiracy to prevent further investigation into the circumstances surrounding the police officer who was charged with official misconduct.  He claims that the other named defendants—Dr. Donald Rockwell, superintendent; Ritchie Thornton, principal of Estacado Junior High; John Gatica, director of Houston School; and Brandon Brownley, president of the board of trustees—were aware of the searches of his son and daughter and failed to stop them.  He also alleges that Defendant Principal Thornton failed to notify his wife prior to the individualized search of his son and threatened his son in the school hallway.

IV.   **Discussion**

"Article III of the Constitution confines the federal courts to deciding actual cases and

controversies." *Society of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir.1992).  A litigant must have standing in order to invoke the jurisdiction of a federal court.  *See id.*  ( "Standing defies precise definition, but at the least insists that the complained of injury be real and immediate rather than conjectural, that the injury be traceable to the defendant's allegedly unlawful conduct, and that relief from the injury must be likely to follow from a favorable ruling.").  To satisfy the standing requirement, a plaintiff must demonstrate: (1) an injury in fact; (2) that is traceable to the defendant's challenged conduct; and (3) that is likely to be redressed by a favorable decision of the court.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992); *see also Gale v. Carnrite*, 559 F.3d 359, 363 (5th Cir. 2009) (noting the same).

Under the standing doctrine, a plaintiff must first show that he personally suffered some injury as a result of the defendant's conduct.  *See Lujan*, 504 U.S. at 560 n.1 (declaring that a plaintiff must have suffered an injury that affects him "in a personal and individual way").  Jackson has alleged that police officers searched and threatened his son and daughter, but he has not put forth facts showing that the searches caused him to personally suffer an injury.   In an action brought pursuant to § 1983, a plaintiff must allege violations of his own legal rights and generally does not have standing to maintain a claim for relief based upon the legal rights or interests of others.  *See Gregory v. Mckennon*, 430 F. App'x 306, 310 (5th Cir. 2011) (per curiam) (holding prisoner lacked standing to seek damages under § 1983 for alleged violations of other prisoners' rights); *see also Green v. State of Texas*, No. 3:01-CV-0060-D, 2001 WL 548899, at *1 (N.D. Tex. May 21, 2001) (dismissing lawsuit brought by the mother of a prisoner because she "can only bring a § 1983 action for deprivations she herself has suffered").

Jackson has asserted claims alleging misconduct against other individuals, including his son

5

and daughter, but he has not alleged facts showing that he personally sustained any injury as a result of the actions of any of the defendants.  In this regard, Jackson lacks standing to pursue his claims under § 1983.  *See Watts v. Dallas Cnty. Sheriff Office*, No. 3:13-CV-984-D-BN, 2013 WL 1759425, at *2–3 (N.D. Tex. March 28, 2013) (holding prisoner proceeding under § 1983 could not pursue claim that a correctional officer allegedly harassed his wife; *i.e.*, a claim asserted "for misconduct against another individual");  *Hunter v. Abi*, No. 2:13-CV-661-WKW, 2014 WL 495359, slip op. at *7 (M.D. Ala. Feb. 5, 2014) (holding plaintiff alleging that the FBI harassed his family and friends did "not have standing to seek relief on behalf of other people, including his family and friends").  Jackson's lack of standing does not, however, foreclose Jackson's family members from bringing lawsuits on their own behalf.  *See Green*, 2001 WL 548899, at *2 (stating dismissal did not preclude plaintiff's son from pursuing his own claims under § 1983).  In fact, Jackson testified at the *Spears* hearing that three additional lawsuits had been filed by other family members regarding the same claims.

Additionally, § 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation.  Under the statute, compensatory damages for mental or emotional injuries are non-recoverable, absent physical injury.  *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . .");  *Geiger v. Jones*, 404 F.3d 371, 375 (5th Cir. 2005) (holding that compensatory damages for mental and emotional injuries are non-recoverable absent physical injury).  In his Complaint, Jackson seeks damages for emotional distress; however, he has not alleged a corresponding physical injury.  *See Watts*, 2013 WL 1759425, at *2 (holding plaintiff failed to state a claim on which relief may be

granted under § 1997e(e) because he "does not allege any physical injury as a result of the allegedly improper advances . . . toward his wife").  Absent a physical injury, § 1997e(e) precludes Jackson from recovering compensatory damages for any mental or emotional harm he may allege.

The physical injury requirement of 1997e(e) does not, however, apply to injunctive relief. *See, e.g.*, *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001).  Nor does it prevent the recovery of punitive damages. *See Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir. 2007) (per curiam) (holding § 1997e(e) did not preclude the recovery of nominal or punitive damages, assuming plaintiff successfully proved a violation of his constitutional rights).  Yet even assuming Jackson did have standing to pursue his claims, he has failed to state a constitutional violation.  A plaintiff proceeding pursuant to § 1983 must allege that his constitutional rights have been violated; in the absence of a constitutional violation, a plaintiff has no cognizable claim under § 1983.  *See* 42 U.S.C. § 1983. Jackson claims that the searches of his children occurred in retaliation for the filing of his writ of habeas corpus, and more broadly he complains of a conspiracy aimed at preventing further investigation into police misconduct.

"To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation."  *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998); *see also Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006)  ("Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercise of his constitutional rights.").  A plaintiff "must allege more than his personal belief that he is the victim of retaliation." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999).  Significantly, Jackson successfully filed his writ of habeas corpus in the fall of 2013.  The Texas Court of Criminal

7

Appeals granted Jackson's writ and remanded his case to the trial court for an evidentiary hearing in order to review the facts surrounding the issuance of the search warrant that lead to his arrest. Jackson testified at the *Spears* hearing that the writ was ultimately denied.  A search of the Texas Court of Criminal Appeals website similarly shows that habeas corpus was denied in June 2014 based upon the findings of the trial court.  The complained of searches of Jackson's children occurred approximately two to three months after the filing of Jackson's writ.  The alleged actions did not, therefore, prevent or otherwise impede Jackson from accessing the courts.

Although Jackson may have a specific constitutional right to access the courts through the filing of his writ of habeas corpus, he has not established either (1) the defendants' intent to retaliate or (2) causation.  To prevail on a claim of retaliation, Jackson must allege specific facts to show that the defendants had the specific intent to retaliate against him through their actions.  In addition, Jackson must establish causation.  Causation requires a showing that "but for the retaliatory motive the complained of incident ... would not have occurred."  *McDonald*, 132 F.3d at 231 (citations omitted).  Therefore, Jackson must show that "but for" the filing of his writ of habeas corpus, his son and daughter would not have been subjected to the complained of searches at their respective schools; *i.e.*, that the filing of his writ actively played a part in the defendants' decision to search the belongings of his son and daughter.  *See Johnson v. Rodriguez*, 110 F.3d 299, 314 (5th Cir. 1997) (noting causation requires a finding that the plaintiff's engagement in the constitutionally-protected activity played an active role in bringing about the alleged violations); *see also Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) ("To state a claim for retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred.").

8

Jackson has made no such showing. According to memorandum and video surveillance footage from the schools, all of the students in any given classroom to be searched left their belongings and then waited in the hallway.  After emptying the classroom, the K-9 dog handler, employed by Interquest and working pursuant to an independent contract with the school district, directed the drug sniffing dog through the belongings.  Only thereafter did the police officers, including Defendants Officers Rodriguez and DeLeon, assist the K-9 handler in questioning the students whose property the dog had alerted on.

The authenticated records include a letter from the city attorney of Plainview, which states that Interquest, in coordination with the district, scheduled dates, times, and the respective schools for the unannounced searches at the beginning of the school year,  prior to the date on which Jackson filed his writ.  An agreement between Interquest and the district contracts for services during the period of August 2013 through May 2014 and was signed on April 15, 2013—approximately a year prior to the searches of Jackson's children.  Jackson has not alleged facts showing that the defendants, in complying with the polices of the school district and the terms of the contract, specifically intended to retaliate against him.

The manner of the searches—the students leaving the classroom during the actual searches, the use of an independent contractor who sent their own K-9 and handler, and the fact that other students in addition to Jackson's children were subjected to the same procedures—further contradicts Jackson's claims that his children were singled out and targeted.  The records include a receipt from Interquest stating that the K-9 dog handler searched five classrooms at Houston School on January 17, 2014, and four classrooms at Estacado Junior High on February 12, 2014. Nothing in the record indicates that the dog handler from Interquest had any awareness before the

search of what personal items belonged to any particular student.  The fact that the dog alerted on Jackson's son's belongings twice and Jackson's daughter's belongings once, leading to a search of their possessions by the police officers, is not enough to show either intent or causation.  *See Woods*, 60 F.3d at 1166 (noting the plaintiff must produce direct evidence of motivation or at least allege a chronology of events through which retaliation may be plausibly inferred).  Jackson has not shown that but for the filing of his writ of habeas corpus, the school district would not have contracted with Interquest and allowed the K-9 handler, assisted by Officer Rodriguez and Officer DeLeon, to search the classrooms at the schools attended by Jackson's son and daughter.  Jackson's theory that the searches were performed as an act of retaliation against him is simply too attenuated.

To the extent that Jackson is claiming that the defendants engaged in a conspiracy, he has also failed to state a constitutional violation.  To establish a conspiracy under § 1983, a plaintiff must show that the defendants had an agreement to commit an illegal act, which resulted in injury to the plaintiff.  *See Hay v. City of Irving*, 893 F.2d 796, 799 (5th Cir. 1990).  "The elements of civil conspiracy are (1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right." *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir.1999), abrogated in part on other grounds, *Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003).  Jackson has made generalized claims of an attempt to cover up unspecified corruption within the Plainview Police Department.  However, the police officer alleged to have been engaged in misconduct in relation to the issued search warrant is not a named defendant or shown to be at all involved in the alleged retaliatory acts.

Overall, Jackson has not put forth facts showing that the routine searches of the schools his children attended or the alerts on their property by a K-9 owned by an independent contractor were

in any way connected to the circumstances surrounding the filing of his writ of habeas corpus.  *See Gonzales v. Currie*, No. 2:13-CV-201, 2014 WL 222353, slip op. at *3. (S.D. Tex. Jan. 21, 2014) (noting plaintiff "still has not pleaded facts sufficient to show or even suggest that Defendants had an *agreement* to commit an illegal act").  His claim that the principals of the two schools, the superintendent, and the president of the board of trustees were involved in a conspiracy with the police department amounts to no more than speculative conclusory allegations.  Absent reference to material facts, conclusory allegations of conspiracy do not state a cause of action under § 1983.  *See Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir.1992) (per curiam); *see also McAfee v. 5th Cir. Judges*, 884 F.2d 221, 222 (5th Cir. 1989) (noting mere conclusory allegations of conspiracy, absent reference to material facts, cannot support a federal conspiracy claim).  Jackson has not presented any evidence of a preconceived plan on the part of the defendants nor any operative factual support for his claims of conspiracy.

## V.    Conclusion

Jackson's allegations do not meet the minimum constitutional standard for standing as he has not identified an injury in fact that affected him personally.  In addition, his claims of retaliation and generalized allegations of conspiracy do not state viable constitutional claims.  Accordingly, this civil rights action should be dismissed for failure to state a claim upon which relief can be granted pursuant to § 1915(e)(2)(B).

## VI.    Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Court dismiss Jackson's Complaint and all claims therein with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B), and deny any pending motions.

11

Dismissal of this action should count as a qualifying dismissal—"a strike"—for purposes of the three strikes provision of the Prison Litigation and Reform Act (PLRA). Further, the dismissal should not release Jackson or the institution of his incarceration from the obligation to pay the previously imposed filing fee. *See Williams v. Roberts*, 166 F.3d 1126, 1128 (5th Cir. 1997). Jackson must therefore continue to pay the filing fee in monthly installments as ordered in the PLRA Filing Fee Order entered in this case.

## VII.   Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:        August 4, 2014.

NANCY M. KOENIG
United States Magistrate Judge